NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
April 9, 2024
Carla Bender
4th District Appellate
Court, IL

2024 IL App (4th) 230624-U

NO. 4-23-0624

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| JOSEPH D. FERGUSON, | ) | No. 18CF1215 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding defendant forfeited his arguments the trial
court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff.
July 1, 1984) and his convictions violated the one-act, one-crime rule.

¶ 2    In May 2023, a jury convicted defendant, Joseph D. Ferguson, of disorderly

conduct (720 ILCS 5/26-1(a)(3.5) (West 2022)) and intimidation (*id.* § 5/12-6(a)(1)). On appeal,

defendant argues (1) his convictions and sentence should be vacated and the matter remanded for

a new trial because the trial court failed to substantially comply with Illinois Supreme Court Rule

401(a) (eff. July 1, 1984) and (2) his convictions for disorderly conduct and intimidation violate

the one-act, one-crime rule. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4    On November 28, 2018, the State charged defendant by indictment with

(1) disorderly conduct for transmitting a threat of violence, death, or bodily harm directed against

persons at Illinois State University (ISU) (count I) and (2) intimidation for communicating a threat of physical harm to John Davenport, an employee of ISU, if he did not punish a certain named student (count II). Following the indictment, defendant was represented by counsel at five pretrial hearings from December 2018 through June 2019.

¶ 5        On July 18, 2019, at a final pretrial hearing, defendant stated he wanted his attorney to withdraw from his case. The trial court asked a lengthy series of questions establishing defendant (1) understood the charges he faced, including the minimum and maximum sentencing ranges for each charge, (2) was eligible for extended-term sentencing on the intimidation charge, and (3) had the right to an attorney, and if he could not afford an attorney, the court could appoint one to represent him. Defendant stated his education level included two years of college and he had prior involvement in legal proceedings. The court found defendant was capable of representing himself and permitted his attorney to withdraw. Defendant waived his right to a jury trial.

¶ 6        On October 1, 2019, the matter proceeded to a bench trial, during which the trial court *sua sponte* developed a *bona fide* doubt as to defendant's fitness. The court ordered a fitness evaluation and appointed a public defender to represent defendant for the purposes of the fitness evaluation. Following a fitness hearing in November 2019, the court found defendant unfit and declared a mistrial. In March 2020, defendant was restored to fitness and chose to continue with his appointed counsel.

¶ 7        On July 28, 2020, during a status hearing, defendant again expressed his desire to represent himself. The trial court explained the nature of defendant's charges and the minimum and maximum penalties for each charge, including that he was eligible for extended-term

sentencing. The court also explained that if defendant could not afford an attorney, the court would appoint one to represent him. The court then permitted defendant to represent himself.

¶ 8        The matter proceeded to a second bench trial in October 2020. Defendant was found guilty on all charges. Defendant appealed. This court reversed defendant's convictions and remanded the matter, finding defendant's jury waiver prior to his first bench trial did not extend to his second bench trial, citing *People v. Bracey*, 213 Ill. 2d 265 (2004). *People v. Ferguson*, No. 4-21-0040 (May 31, 2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)(2)).

¶ 9        At the beginning of each status hearing in August and October 2022, the trial court inquired with defendant if he wished to have counsel appointed to his case. Defendant declined each time. On February 6, 2023, defendant appeared before a different judge, who admonished him on his rights to be represented by counsel. Defendant interjected, "We've done this already." The court stated it would inquire with the prior judge to confirm whether defendant's admonishments concerning self-representation had previously occurred. During a status hearing in May 2023, the court questioned whether it had previously discussed defendant's right to counsel. Defendant indicated the court had.

¶ 10        The matter proceeded to a jury trial on May 17, 2023. Prior to jury selection, the trial court admonished defendant of his right to counsel. Defendant said he understood and confirmed he wished to proceed *pro se*. The court then explained the minimum and maximum sentences for each offense charged. Regarding the intimidation charge, the court, after conferring with the State, explained defendant was only eligible for a maximum sentence of 5 years in the Illinois Department of Corrections and not extended-term eligible for a 10-year sentence, as had been previously explained.

¶ 11    Because defendant is not challenging the sufficiency of the evidence, we only summarize the trial evidence relevant to his contentions on appeal. The State called one witness, Davenport, in its case-in-chief. He testified he was the dean of students for ISU. At the time, there were 20,500 students attending ISU. Davenport came to know defendant through his work with the Redbird Care Team, which was dedicated to students who needed additional support and attention for health or conduct reasons. Davenport stated he had contact with defendant on five occasions regarding his conduct. Defendant had been the subject of a Title IX investigation that required him to meet certain conditions to continue attending ISU. One such condition was defendant needed to obtain documentation from a licensed counselor stating he would not be a threat to certain individuals or the campus. During a phone call on November 20, 2018, Davenport recalled defendant's demeanor fluctuated between "generally normal" to "agitated at times and a bit aggressive." Davenport said defendant threatened members of the Watterson Towers residence hall, stating "while people would be out front unloading their cars potentially opening fire on them and also the potential of utilizing pipe bombs to cause harm to those folks." Davenport said defendant indicated he had the ability to "find firearms and to receive a [Firearm Owner's Identification] card" and "was able to make or find pipe bombs."

¶ 12    Defendant wanted an individual named Catalina punished for lies she had told about defendant during a "previous conduct case." Defendant indicated that, even if his plans had been thwarted, he had a "friend or a person he knew that might be willing to continue to look for Catalina if for some reason he was unable to do so." Defendant had stated he would go to Davenport after shooting people at Watterson Towers, but that police would "probably get [defendant] before he was able to get to [Davenport]." Defendant gave Davenport options to "save" himself, such as making "amends," filing an order of protection, and a third option

- 4 -

Davenport could not recall. Defendant stated an order of protection would not protect Catalina. Davenport found defendant's comments disturbing and threatening. Davenport also considered defendant's statements to be personally threatening to Davenport's own physical safety.

¶ 13 Davenport made contemporaneous handwritten notes of his conversation with defendant and immediately typed them on his computer before sending them to the ISU police department. Davenport's typed notes were admitted into evidence and published to the jury without objection.

¶ 14 The jury found defendant guilty of all charges.

¶ 15 Defendant filed a *pro se* motion for a new trial, arguing, *inter alia*, he did not receive a fair trial. On July 10, 2023, at the hearing on defendant's posttrial motion and sentencing, the trial court began by asking defendant if he wished to have an attorney appointed to represent him. Defendant responded, "No." The court denied defendant's motion for a new trial. The court sentenced defendant to two years' imprisonment for disorderly conduct and two years' imprisonment for intimidation, to be served concurrently.

¶ 16 This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18 On appeal, defendant argues (1) his convictions and sentence should be vacated and the matter remanded for a new trial because the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) and (2) his convictions for disorderly conduct and intimidation violate the one-act, one-crime rule. We address each claim in turn.

¶ 19                               A. Rule 401(a) Claim

¶ 20 Defendant contends the trial court failed to substantially comply with Rule 401(a) because he was not properly admonished until the day of his jury trial. Additionally, he claims,

the court's admonishment failed to elicit defendant understood the nature of the charges against him and incorrectly informed him of the maximum penalties. Defendant cites *People v. Martin*, 2021 IL App (4th) 180267, in support. Defendant concedes this issue was not raised before the trial court or in any posttrial motion, but he requests we review it under the plain-error doctrine.

¶ 21 "This court has consistently held the right to counsel is so fundamental that we will review as plain error a claim there was no effective waiver of counsel although the issue was not raised in the trial court." *People v. Seal*, 2015 IL App (4th) 130775, ¶ 26. Therefore, we will review defendant's contentions on appeal under the plain-error doctrine. "The plain-error doctrine bypasses forfeiture principles and allows a reviewing court to consider unpreserved error when: (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence." *Id.* "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 22 "Rule 401(a) governs the trial court's acceptance of a defendant's waiver of counsel." *People v. Reese*, 2017 IL 120011, ¶ 61. The rule provides:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 23    "The purpose of [Rule 401(a)] is to ensure that a waiver of counsel is knowingly and intelligently made." (Internal quotation marks omitted.) *Reese*, 2017 IL 120011, ¶ 62. Strict, technical compliance with Rule 401(a) is not required, "[r]ather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *People v. Wright*, 2017 IL 119561, ¶ 41. Therefore, a reviewing court must evaluate whether a defendant has knowingly and intelligently waived the right to counsel *sui generis* by evaluating the record as a whole, including the background, experience, and conduct of the defendant. *People v. Lesley*, 2018 IL 122100, ¶ 51. "Whether a trial court failed to substantially comply with Rule 401(a) admonishments is a question of law we review *de novo*." *Martin*, 2021 IL App (4th) 180267, ¶ 31.

¶ 24    In *Martin*, the defendant had switched between being represented by counsel and proceeding *pro se* on several occasions and had been admonished pursuant to Rule 401(a) numerous times. *Id.* ¶ 34. After the defendant had been found guilty by a jury, he proceeded to sentencing *pro se*. *Id.* ¶ 13. Subsequently, the defendant requested and received the appointment of a public defender and then, again, requested to proceed *pro se*. *Id.* ¶¶ 14-15. The trial court failed to admonish defendant pursuant to Rule 401(a) prior to permitting defendant to waive his right to counsel on the last occasion. *Id.* ¶ 15. The *Martin* court held, "Rule 401(a) admonishments must be provided where a defendant waives counsel, proceeds *pro se*, requests counsel for a distinct stage of the proceedings, receives counsel, and then decides to waive counsel *again*." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶ 36.

¶ 25　　　　　We find *Martin* distinguishable from the case *sub judice*. Unlike the defendant in *Martin*, here, defendant did not voluntarily switch between being represented by counsel and proceeding *pro se* on numerous occasions. Defendant began with private counsel but then chose to proceed *pro se*. The trial court properly admonished defendant pursuant to Rule 401(a) when he elected to waive his right to counsel in July 2019. The court later appointed counsel to represent him without his expressed interest because it had developed a *bona fide* doubt regarding his fitness to stand trial. Thereafter, appointed counsel represented defendant until defendant had been restored to fitness, and afterwards, defendant sought to proceed *pro se* again. The court, again, properly admonished defendant pursuant to Rule 401(a) in July 2020. Each time the court approached the issue of defendant's right to counsel thereafter, defendant maintained his desire to continue *pro se* throughout the remainder of the proceedings through his second bench trial, the jury trial, and sentencing.

¶ 26　　　　　Defendant argues he was not properly admonished until the day of his jury trial, but this is simply not true. Defendant had been admonished of his right to counsel in July 2019 and 2020. We note, the *Martin* court found the defendant's circumstances in that case to be an exception to the continuing waiver rule that necessitated renewed Rule 401(a) admonishments. *Id.* The continuing waiver rule permits a defendant to waive his right to counsel and that waiver stays in place throughout the remaining stages. *Id.* ¶ 33. The two exceptions to the continuing waiver rule are "(1) [when] the defendant later requests counsel or (2) other circumstances suggest that the waiver is limited to a particular stage of the proceedings." (Internal quotation marks omitted.) *Id.*

¶ 27　　　　　The first exception is not applicable because defendant at no point in the entirety of the proceedings requested counsel. Defendant argues the second exception applies because the

waiver was limited to the conclusion of his second bench trial, which was later reversed pursuant to *Bracey*. Defendant cites no case law to support this argument. Indeed, his jury waiver was no longer in effect, but there is no parallel to *Bracey* when it comes to waiver of the right to counsel. In fact, the very existence of the continuing waiver rule suggests the opposite of *Bracey*, which held an initial jury waiver becomes void upon commencing a new trial. We find no reason to preclude applying the continuing waiver rule. Defendant did not request counsel, and the circumstances of this case make it clear defendant sought to represent himself at each particular stage of proceedings. Therefore, we find no clear or obvious error, let alone plain error, and honor defendant's forfeiture of this issue.

¶ 28    Because we find the continuing waiver rule is applicable, we need not address defendant's claim that the last Rule 401(a) admonishment was incorrectly given as it pertained to his maximum sentencing range just prior to his jury trial. See 720 ILCS 5/12-6(b) (West 2018) (stating the sentence for intimidation is "a term of imprisonment of not less than 2 years and not more than 10 years"). Both of the trial court's prior admonishments clearly explained defendant was eligible for a maximum of 10 years' imprisonment for the intimidation charge. However, even if we had considered defendant's argument, we are uninclined to find he had been prejudiced by the court's misstatement of his maximum sentencing range when he had only been sentenced to two years' imprisonment for the offense. See *Wright*, 2017 IL 119561, ¶ 41 (stating the inadequate admonishment must prejudice the defendant's rights).

¶ 29                    B. One-Act, One-Crime Claim

¶ 30    Defendant next contends his indictment did not apportion any threats made by him to support each count distinctly and the State's evidence failed to distinguish the threats

sufficiently to form the basis for each charge separately. Defendant again concedes this issue was not raised before the trial court but asks we review this issue under the plain-error doctrine.

¶ 31 As we stated earlier, the plain-error doctrine "allows a reviewing court to consider unpreserved error when: (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence." *Seal*, 2015 IL App (4th) 130775, ¶ 26. However, we must first determine "whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49.

¶ 32 Illinois courts follow a two-step analysis to determine whether a one-act, one-crime violation has occurred. *People v. Coats*, 2018 IL 121926, ¶ 12. "First, the court ascertains whether the defendant's conduct consisted of a single physical act or separate acts." *Id.* The definition of "act" is " 'any overt or outward manifestation which will support a different offense.' " *People v. Price*, 2011 IL App (4th) 100311, ¶ 26 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). The one-act, one-crime rule prohibits a defendant from being convicted of multiple offenses "based on precisely the same physical act." *Id.* However, a defendant can be convicted of multiple offenses that share a common physical act, so long as there is an additional physical act to support a separate offense. *Id.*

¶ 33 Defendant's conviction for disorderly conduct required the State to prove he knowingly transmitted to Davenport a threat of violence, death, or bodily harm directed against persons at ISU. 720 ILCS 5/26-1(a)(3.5) (West 2018). His conviction for intimidation required the State prove (1) defendant communicated to Davenport a threat to, without lawful authority, inflict physical harm on Davenport or any other person and (2) defendant intended to cause Davenport to perform an act. *Id.* § 12-6(a)(1).

¶ 34　　　　　The evidence presented at trial both through Davenport's testimony and his contemporaneous notes showed defendant's conduct shared a common physical act of threats, but the threats were distinct and directed toward specific actions with multiple victims. In support of the disorderly conduct charge, defendant transmitted to Davenport threats of violence, death, or bodily harm against persons at the Watterson Towers residence hall and Catalina. The evidence showed defendant also threatened violence, death, or bodily harm to Davenport; however, it was clear from Davenport's testimony that the threats to him were specifically intended to cause Davenport to punish Catalina for what defendant believed were lies Catalina had told about defendant. The fact defendant had given Davenport an opportunity to spare himself from defendant's threats further shows that defendant's threats were distinct physical acts to sustain the separate offense of intimidation. Furthermore, defendant's threats also indicated although Davenport could spare himself, he could not spare Catalina. Therefore, we find defendant's convictions did not violate the one-act, one-crime rule. Because we find no violation of the one-act, one-crime rule, we find no error, and, thus, honor defendant's forfeiture of this issue.

¶ 35　　　　　　　　　　　　　　III. CONCLUSION

¶ 36　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 37　　　　　Affirmed.